# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4065

_____

| | |
|---|---|
| Glenn H. Zacher, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| J. W. Tippy, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted:  October 22, 1999

Filed:  January 28, 2000

_____

Before BOWMAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Glenn H. Zacher appeals from the district court's[1] denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C.  § 2241 (1994).  Zacher petitioned for the writ on the ground that he ought to be released a year early from his sentence for conspiracy to possess marijuana with intent to distribute, because he participated in the Bureau of

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Prisons' drug abuse treatment program. The Bureau of Prisons denied Zacher early release because he had an earlier state conviction that falls within the Bureau's definition of aggravated assault and therefore disqualifies him from early release under 28 C.F.R. § 550.58 (1999). Zacher appeals the denial of the writ, arguing that the Bureau of Prisons changed the requirements for early release after he complied with existing standards. He also contends that he is not subject to the requirement of 18 U.S.C. § 4042(b) (1994 and Supp. III 1997) that law enforcement officials be notified before his release. We affirm in part and remand in part for dismissal by the district court.

Under the Violent Crime Control and Law Enforcement Act of 1994, Congress required the Bureau of Prisons to make substance abuse treatment available to each federal prisoner with a treatable substance abuse condition. 18 U.S.C. § 3621(b) (1994). As an incentive for participation in substance abuse treatment, Congress authorized the Bureau of Prisons to offer early release to prisoners "convicted of a nonviolent offense" who undergo treatment. 18 U.S.C. § 3621(e)(2)(B) (1994). The language of section 3621(e)(2)(B) is permissive, stating that the Bureau "may" grant early release, but not guaranteeing eligible inmates early release.[2] See Bellis v. Davis, 186 F.3d 1092, 1094 (8th Cir. 1999), pet'n for cert. filed, No. 99-7558 (Dec. 15, 1999).

In 1995, the Bureau of Prisons adopted a regulation governing eligibility for early release on completion of drug abuse treatment, which created two different categories of prisoners that would be excluded by reason of a "violent offense." The

---

[2]Section 3621(e)(2)(B) provides in whole:

(B) Period of custody.-- The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

regulation established different criteria for "violent offenses," according to whether the violent offense was the prisoner's current crime of conviction or a past crime. 60 Fed. Reg. 27,695 (1995) (codified at 28 C.F.R. § 550.58 (1995))[3]. A prisoner was not eligible for early release if he was currently in prison for a crime "determined to be a crime of violence as that term is defined in 18 U.S.C. § 924(c)(3)." Under the definition in section 924(c)(3), only felonies are considered "crimes of violence." As to prisoners whose current crime of conviction was nonviolent, but who had committed crimes in the past, the Bureau used a different definition of "violent offense," because these crimes would not all be federal crimes, easily classifiable under section 924(c)(3). The Bureau explained:

> Because state convictions may show a considerable range in the degree of violence used in the offense, the Bureau has chosen to use the above cited categories of crimes [homicide, forcible rape, robbery, or aggravated assault], which are reported under the FBI Violent Crime Index, as the sole determinant of violence in the criminal history.

60 Fed. Reg. 27,692 (1995).

The Bureau adopted a Program Statement, No. 5330.10 (May 25, 1995), which reiterated section 550.58. Program Statement No. 5330.10 further directed those administering the treatment program to assess early release eligibility by reference to the current offense/past offense dichotomy set up by section 550.58:

---

[3]The relevant part of the 1995 version of section 550.58 provided:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release . . . unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

Drug abuse treatment staff shall determine an inmate's eligibility for early release consideration by:

♦ obtaining from the unit team the determination of the inmate's current offense of conviction regarding its definition as violent or non-violent.

♦ reviewing the inmate's PSI and, when not available in the PSI Report, the FBI Rap Sheet to determine if the inmate has any previous state or federal convictions for robbery, forcible rape, aggravated assault, or homicide.

The Bureau later revamped both section 550.58, see 62 Fed. Reg. 53,691 (1997), and the Program Statement, see No. 5330.10 (October 9, 1997), which now include the words "felony or misdemeanor" in describing the categories of past offenses which will disqualify a prisoner from early release. See 28 C.F.R. § 550.58(a)(iv) (1999).

**I**.

Zacher is now in prison for a federal crime, conspiracy to possess more than 100 kilograms of marijuana with intent to distribute. His release date, with good time credit, would be August 8, 2000. Zacher participated in the Bureau of Prisons' "500 Hour Drug Abuse Program" when he was at the Three Rivers Federal Correctional Institution. He received a "Provisional Notice of Residential Drug Abuse Program and 3621(e) Eligibility" dated June 20, 1996 from the Bureau's Drug Abuse Program Coordinator, stating: "My current assessment, in consultation with your unit team, is that it does appear that you will be provisionally eligible for early release." This would have made his release date August 8, 1999. The notice contained a check list with conditions for eligibility, including a condition that the prisoner must "[n]ot have any

prior adult conviction for homicide, forcible rape, robbery, or aggravated assault." The Drug Abuse Program Coordinator initialed that condition as satisfied.

However, Zacher did in fact have a previous California State court conviction for Assault with a Deadly Weapon or Force Likely to Produce Great Bodily Injury. Zacher's presentence report in the marijuana case describes the California conviction:

> Police reports reflect that the defendant and another individual went to the residence of James Nelson, then age 25, and beat him because they thought that he had stolen some drugs from Zacher's residence. The beating of the victim, according to police reports, was very serious, and the victim was told by Zacher that the victim's house would be fire-bombed, and that the victim would be killed if he did not "get it back within 24 hours."

The presentence report indicated that Zacher was an adult when he committed the assault, and that he received a sentence of twenty-four months' probation.

When Zacher was transferred from Three Rivers to the federal prison in Oklahoma City, counsel for the Bureau of Prisons reviewed his eligibility for early release. On December 2, 1996, counsel determined that Zacher was not eligible because of the California conviction.

In January 1997 the Bureau of Prisons reversed itself and notified Zacher that he would be eligible for early release because his California conviction was classified as a misdemeanor. Under California law, even though Assault with a Deadly Weapon or Force Likely to Produce Great Bodily Injury carries a range of punishment from one year to four years imprisonment, Cal. Penal Code § 245 (West 2000), a crime is nevertheless classified as a misdemeanor if the court sentences the defendant to probation only and declares the offense a misdemeanor. Cal. Penal Code § 17(3) (West 2000 ). The government concedes that Zacher's assault was a misdemeanor

under this standard. Even though all versions of section 550.58 and Program Statement No. 5330.10 provided that a previous conviction for aggravated assault would render a prisoner ineligible for early release, and neither the regulation nor the Program Statement mentions classification as a misdemeanor or felony of the aggravated assault as relevant to eligibility, the Bureau of Prisons sent Zacher a notice that it had reversed its eligibility determination based on this factor. Theresa Johnson, the Drug Abuse Program coordinator at the Oklahoma City prison wrote Zacher on August 6, 1997:

> [O]n 1-13-97, again as a result from communication with Regional counsel through our institution attorney, it was decided that your prior offense, Assault with a Deadly Weapon, because it was not a felony, would not keep you from receiving the sentence reduction. You signed this latest notice of 3621(e) eligibility on 1-14-97.
>
> The issue of 3621(e) has not been easily determined in your case, because of the seemingly violent nature of the offense and the fact that it was a misdemeanor. Although initially there was some confusion, the final determination is that you are still provisionally eligible for 3621(e) early release.

Despite the conclusion of this letter, the "final determination" was not final. Zacher was transferred once again, this time to the Federal Correctional Institution at Waseca, Minnesota. Once again, the Drug Abuse Coordinator reviewed Zacher's eligibility for early release. The Bureau then reversed itself for the third time. On May 28, 1998, Zacher was informed that he was ineligible for early release based on his earlier conviction for aggravated assault, which counsel concluded met the definition of "aggravated assault" used by the Bureau of Prisons in that it involved a deadly weapon and infliction of severe bodily injury on the victim.[4] Zacher contends that his

---

[4]The Bureau of Prisons uses the FBI's <u>Uniform Crime Reports</u> definition of "Aggravated Assault," which provides:

records show there was no weapon used in committing the assault, but he does not dispute that he inflicted severe bodily injury.

Zacher filed this habeas corpus petition, alleging that the Bureau of Prisons' application of its Program Statement to him was unlawful because the Bureau improperly included his earlier misdemeanor conviction as a "crime of violence" that made him ineligible for early release under section 3621(e). He contended that not until a change to the Program Statement on October 9, 1997 did the Bureau consider inmates ineligible for early release because of a misdemeanor conviction. He argued that this change violated the Ex Post Facto clause of the Constitution. He further alleged that he had a Due Process right to early release under section 3621 and that the Bureau of Prisons had denied him equal protection by refusing him eligibility for early release while granting early release to Glenn Semin, whom Zacher alleged was similarly situated in that he had a prior state "felony assault" conviction. He also alleged that the Bureau misapplied 18 U.S.C. § 4042(b) and that the Bureau wrongly planned to notify law enforcement officials of his release.

The district court held that 28 C.F.R. § 550.58 made early release unavailable to prisoners with prior convictions for aggravated assault. Zacher's earlier conviction fell within the FBI definition that the Bureau used for deciding eligibility for early release. It was therefore within the Bureau of Prisons' discretion to determine that Zacher was not eligible, and so the district court dismissed Zacher's petition. The

Aggravated assault is an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. This type of assault is usually accompanied by the use of a weapon or by means likely to produce death or great bodily harm. Attempts are included since it is not necessary that an injury result when a gun, knife, or other weapon is used which could and probably would result in serious personal injury if the crime were successfully completed.

district court did not rule on Zacher's claim that the Bureau wrongly considers him subject to section 4042 notification.

## II.

Zacher argues that under the pre-1997 version of section 550.58, he could only be disqualified from early release if his past conviction satisfied the "violent offense" criteria imposed for current offenses. As we have seen, current offenses were originally classified as "violent" or "nonviolent" by reference to section 924(c)(3), under which only felonies could be "violent."[5] Because Zacher's past conviction for aggravated assault was only a misdemeanor conviction under California law, he contends that his past conviction does not qualify as a "violent offense" under section 924(c)(3). Therefore, Zacher argues, he cannot be excluded from eligibility, because his past crime did not meet the definition of "violent offense" applicable to current offenses.

Under the two-tier definition of violent offenses used in original section 550.58, current offenses were classified by different criteria than past offenses. Zacher's past aggravated assault clearly met the criteria for exclusion as a past crime under the original version of section 550.58. Thus, it is utterly irrelevant that Zacher's past offense does not meet the felony criterion relevant only to current offenses, and we reject his arguments based on Program Statement No. 5162.02 (July 24, 1995), interpreting the standard for current offenses.

Zacher also argues that if section 550.58 disqualified him from early release on the basis of a misdemeanor, the regulation was an impermissible interpretation of

[5]Section 550.58 has been amended so that it no longer categorizes even current offenses by reference to section 924(c)(3). <u>See</u> 62 C.F.R. § 53,691 (1997) (codified at 28 C.F.R. § 550.58 (1999)).

section 3621(e)(2)(B). The Bureau's separate definition of "violent offense" for past offenses has been approved by every Circuit court that has considered it. See Martinez v. Flowers, 164 F.3d 1257, 1260 (10th Cir. 1998); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998); Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997); Caputo v. Clark, 132 F.3d 36, 1997 WL 774921 at *2 (7th Cir. 1997) (unpublished), cert. denied, 119 S. Ct. 128 (1998); Jacks v. Crabtree, 114 F.3d 983, 986 (9th Cir. 1997), cert. denied, 523 U.S. 1009 (1998). Since section 3621(e) does not define "nonviolent offense," Congress has left a gap to be filled by the agency administering the statute. See Love v. Tippy, 133 F.3d 1066, 1069 (8th Cir.), cert. denied, 118 S. Ct. 2376 (1998). We must defer to the Bureau's interpretation as long as it is a permissible construction of the statute. See id. (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)). Like our sister courts, we conclude that section 3621(e) permits the Bureau to include past offenses in determining whether a prisoner has been convicted only of "nonviolent offenses." We also conclude that the Bureau's method for determining which past offenses are violent is a permissible interpretation of the statute. In particular, inclusion of certain misdemeanors as "violent offenses" is not inconsistent with the statute where, as here, the conviction was for a crime involving infliction of a serious beating on the victim. Moreover, after briefing in this case was complete, this Court decided Bellis v. Davis, 186 F.3d 1092, 1095 (8th Cir. 1999), pet'n for cert. filed, No. 99-7558 (Dec. 15, 1999), in which we held that the Bureau could exercise its discretion under section 3621(e) to disqualify from early release persons convicted of certain categories of crimes without regard to whether those crimes were "crimes of violence."

In the same vein, Zacher argues that the Bureau itself interpreted section 550.58 as requiring past offenses to be felonies until 1997, when the Bureau first decided past misdemeanor aggravated assault convictions would disqualify a prisoner from the early release program. Zacher's argument is based on a misreading of the Bureau's regulation and Program Statements.

When the Bureau initially promulgated section 550.58, it explained that as to past offenses, rather than using the section 924(c) definition of violent crime, it would use the four crimes listed in the FBI Violent Crime Index, in an attempt to impose some uniformity on widely varying state laws. 60 Fed. Reg. at 27,692. The FBI Uniform Crime Reports defined "aggravated assault" as "an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. This type of assault is usually accompanied by the use of a weapon or by means likely to produce death or great bodily harm." Zacher's California assault conviction is on its face the type of conviction described by the Bureau in the original section 550.58 and supporting Program Statement No. 5330.10. Moreover, the crime described in Zacher's presentence report clearly falls within the definition of aggravated assault used by the FBI.[6] Thus, in 1997, when the Bureau amended section 550.58 and Program Statement No. 5330.10 to state explicitly that certain past crimes were disqualifying whether felonies or misdemeanors, the Bureau was not changing the law in this particular respect. It was at the most clarifying what was already contained in the original regulation and Program Statement. Amendments to a regulation that merely clarify preexisting law are not subject to the various Constitutional limits on retroactivity that Zacher invokes. See Orr v. Hawk, 156 F.3d 651, 654 (6th Cir. 1998); see generally Lynce v. Mathis, 519 U.S. 433, 441 (1997) ("To fall within the ex post facto prohibition, a law must be retrospective--that is, 'it must apply to events occurring before its enactment'--and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime.").

_____

[6]Zacher argues briefly that the FBI Uniform Crime Reporting Database definition of "aggravated assault" hinges on use of a deadly or dangerous weapon. Zacher's assault involved no weapon. The only FBI definition the parties have supplied the court defines aggravated assault as "an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury." The definition states that the crime is "usually" accompanied by use of a weapon or other means "likely to produce death or great bodily harm." This definition does not require a weapon where the perpetrator manages to inflict severe injury without one, as Zacher apparently did.

Nor can we take the Bureau's actions in telling Zacher (twice) that he was provisionally entitled to early release as a binding interpretation of the regulation requiring a felony for disqualification; the Bureau hardly had a steadfast and considered position on this issue, since it reversed itself three times in its communications with Zacher. Zacher can have gained no legally protected interest in an erroneous misapplication of the Bureau's regulations, and therefore, the Bureau's correction of its error cannot violate the Due Process clause. See Royal v. Tombone, 141 F.3d 596, 602 (5th Cir. 1998) (per curiam) ("As any determination by the BOP that Royal was eligible for a sentence reduction was erroneous, his actual status has not been retroactively changed. . . ."); Whipple v. Herrera, 69 F. Supp.2d 1310, 1316 (D. Colo. 1999). Zacher's case differs crucially from that of Cort v. Crabtree, 113 F.3d 1081 (9th Cir. 1997), in which the Bureau issued a Program Statement changing the criteria for early release after the petitioners had qualified for early release under the former Program Statement.

Zacher's petition failed to allege an equal protection violation stemming from the release of Glenn Semin, who, Zacher alleged, had a past Nebraska "felony assault" conviction. Because the Bureau's criterion for disqualifying past assault convictions hinges on whether the assault was "aggravated," not on whether it was a misdemeanor or felony, Semin could have been eligible for early release under the Bureau's regulations. Zacher has not alleged disparate treatment of an individual similarly situated to him. Cf. Powells v. Minnehaha County Sherriff Dep't, No. 99-2029, 1999 WL 1211904, at *1 (8th Cir. Dec. 20, 1999). We have reviewed Zacher's other arguments for early release and conclude they are without merit.

**III**.

Zacher argues that he should not be subject to the notification procedure under 18 U.S.C. § 4042(b). This claim must be dismissed because Zacher did not exhaust his administrative remedies, see Greene v. Meese, 875 F.2d 639, 641 (7th Cir. 1989), and

also because the Warden concedes in this Court that section 4042(b) does not apply to Zacher and has changed Zacher's records accordingly. This claim is therefore moot. See Johnson v. Horn, 150 F.3d 276, 287 (3d Cir. 1998).

We affirm the denial of Zacher's petition insofar as he claims the right to early release, and we remand for dismissal of that portion of his claim relating to notification under section 4042(b).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.